# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REY VILLANUEVA, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-07-CV-1034 OG (NN) |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Orlando Garcia**
      **United States District Judge**

### Introduction

Plaintiff Rey Villanueva brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Villanueva is not disabled for the purposes of the Social Security Act (the Act) and denying his application for Disability Income Benefits (DIB). Villanueva asks the district court to reverse the Commissioner's decision and to render judgment in his favor. In the alternative, Villanueva asks the district court to reverse the decision and remand the case for further proceedings.

After considering Villanueva's brief in support of his complaint,[1] the brief in support of

---

[1]Docket entry # 13.

the Commissioner's decision,[2] Villanueva's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

### Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

### Administrative Proceedings

Based on the record in this case, Villanueva exhausted his administrative remedies prior to filing this action in federal court.  Villanueva applied for DIB benefits on March 25, 2005, alleging disability beginning July 21, 2003.[5]  Villanueva did not associate an injury or condition with this date.  The Commissioner denied the application initially and on reconsideration.[6]

---

[2]Docket entry # 14.

[3]Docket entry # 15.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 74.

[6]*Id*. at pp. 27-28.

Villanueva then asked for a hearing before an ALJ.[7]  A hearing was held on May 21, 2007.[8]  The ALJ issued a decision on September 28, 2007, concluding that Villanueva is not disabled within the meaning of the Act.[9]  Villanueva asked for review of the decision.  The Appeals Council denied the request for review after determining that no basis existed for reviewing the ALJ's decision.[10]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Villanueva moved for leave to proceed in forma pauperis on December 19, 2007.[11]  After I granted Villanueva's request,[12] the clerk filed Villanueva complaint seeking review of the Commissioner's decision.[13]

**Issue Presented**

Is the ALJ's decision that Villanueva is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

**Analysis**

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the

---

[7]*Id*. at p. 25.

[8]*Id*. at pp. 321-86.

[9]*Id*. at pp. 11-17.

[10]*Id*. at p. 4.

[11]Docket entry # 1.

[12]Docket entry # 2.

[13]Docket entry # 3.

Commissioner applied the proper legal standards in evaluating the evidence.[14]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[16]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[17]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[18]  Where a claimant submits new evidence to the Appeals Council and the Appeals Council denies the claimant's request for review of the ALJ's decision, the evidence submitted for the first time to the Appeals Council becomes part of the record to be reviewed by the reviewing court.[19]  Conflicts in the evidence and credibility

---

[14]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[15]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[16]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[17]*Martinez*, 64 F.3d at 173.

[18]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[19]*See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (explaining that the district court must consider evidence submitted for the first time to the Appeals Council because the Appeals Council considered and evaluated the evidence, and thus the evidence constitutes evidence upon which the decision complained about is based).

assessments are for the Commissioner and not for the courts to resolve.[20]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[21]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[22]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[23]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[24]

---

[20]*Martinez*, 64 F.3d at 174.

[21]*Id*.

[22]42 U.S.C. § 1382(a)(1) & (2).

[23]42 U.S.C. § 1382c(a)(3)(A).

[24]42 U.S.C. § 1382c(a)(3)(B).

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[25]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[26]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[27]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[28]  The second step involves determining whether the claimant's impairment is severe.[29]  If it is not severe, the claimant is deemed not disabled.[30]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[31]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[32]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[33]  If the claimant is still able to do his past work, the

---

[25]20 C.F.R. §§ 404.1520 and 416.920.

[26]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[27]20 C.F.R. §§ 404.1520 and 416.920.

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

claimant is not disabled.[34]  If the claimant cannot perform his past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities,

age, education, and work experience, to do other work.[35]  If the claimant cannot do other work,

he will be found disabled.  The claimant bears the burden of proof at the first four steps of the

sequential analysis.[36]  Once the claimant has shown that he is unable to perform his previous

work, the burden shifts to the Commissioner to show that there is other substantial gainful

employment available that the claimant is not only physically able to perform, but also, taking

into account his exertional and nonexertional limitations, able to maintain for a significant period

of time.[37]  If the Commissioner adequately points to potential alternative employment, the burden

shifts back to the claimant to prove that he is unable to perform the alternative work.[38]

**B. Findings and Conclusions of the ALJ**

          In the instant case, the ALJ reached his decision at step four of the evaluation process.

The ALJ first determined that Villanueva was insured for DIB through December 31, 2008.[39]  At

step one, the ALJ determined that Villanueva has not engaged in substantial gainful activity since

Villanueva's alleged onset date of July 21, 2003.[40]  At step two, the ALJ determined that

---

[34]*Id.*

[35]*Id.*

[36]*Leggett*, 67 F.3d at 564.

[37]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[38]*Anderson v. Sullivan*, 887 F.2d 630, 632-3 (5th Cir. 1989).

[39]SSA record, p. 13.

[40]*Id.*

Villanueva has the following severe impairments: tennis elbow, status post cervical fusion at C5-C6, and degenerative disc disease of the lumbar spine.[41]  At step three, the ALJ determined that these impairments do not meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[42]  At step four, the ALJ determined that Villanueva has the residual functional capacity for a range of light work, with the following limitations: Villanueva can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of six hours in an eight-hour day; sit for about eight hours in an eight-hour work day; and occasionally crawl, crouch, kneel, stoop, bend, balance and climb ramps/stairs; and never climb ladders, ropes, or scaffolds.[43]  The ALJ also found that Villanueva requires the option to change position from sitting to standing, and vice versa, for a brief period to relieve discomfort.[44]  The ALJ found that Villanueva can perform his previous work as a security guard.[45]  Thus, the ALJ concluded that Villanueva is not disabled.[46]

## C.  Villanueva's Allegation of Error

Villanueva alleges disability based on pain in his neck, lower back, right hip and legs.[47] He supported his disability claim with medical records from Audie Murphy Veterans Hospital, a

---

[41]*Id.*

[42]*Id.* at p. 14.

[43]*Id.*

[44]*Id.*

[45]*Id.* at p. 16.

[46]*Id.* at p. 17.

[47]*Id.* at pp. 66-71.

few treatment records for a 1998 on-the-job injury that occurred before Villanueva retired from the U.S. Postal Service, and treatment records from Dr. Salvador Baylan.  The veterans-hospital treatment records document Villanueva's complaints about hemorrhoids, dry eyes, neck pain, burning during urination, pain while walking bare-footed, back pain, and depression.  The records contain a report of examination written on December 8, 2003, wherein Dr. Eduardo S. Javier opined that Villanueva "cannot work anymore."[48]  Villanueva complains that the ALJ rejected this opinion.

Villanueva also complains that the ALJ rejected Dr. Baylan's opinion that he cannot work.  Dr. Baylan—a specialist in physical medicine and rehabilitation—treated Villanueva as part of a worker's compensation claim.  Villanueva was apparently injured processing mail when the chair he was sitting in broke.[49]  On January 21, 2003, Dr. Baylan opined that problems with elbows, neck and lower back precluded Villanueva from working.[50]  On March 1, 2006, Dr. Baylan completed a "multiple impairment questionnaire," opining that Villanueva: can lift and/or carry 5-10 pounds occasionally and 0-5 frequently; is significantly limited in doing repetitive reaching, handling, fingering or lifting; and is moderately limited in grasping, turning, twisting objects; using fingers/hands for fine manipulations and using arms for reaching (including overhead).[51]  Dr. Baylan also opined that Villanueva would miss work more than three times a

---

[48]*Id*. at p. 124.

[49]*Id*. at p. 184.

[50]*Id*. at p. 279.

[51]*Id*. at p. 310.

month.[52]  Although Villanueva claims the ALJ disregarded the opinions of Dr. Javier and Dr.

Baylan, and that she picked-and-chose medical evidence to support her findings, the record does

not support that assertion.

The ALJ must ordinarily give a treating physician's opinion considerable weight in

determining whether a person is disabled, but the ALJ may reject the opinion of a physician when

the evidence supports a contrary conclusion.[53]  The ALJ may assign little or no weight to a treating

physician's opinion when the opinion is conclusory, unsupported by medically acceptable clinical,

laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[54]  In this case,

the ALJ determined that' [t]he medical evidence is . . . non-supportive of the claimant's

allegations of disability, including the character and degree of pain he complains of, as it fails to

substantiate limitations to the degree he asserts or to document a level of functional restriction

incompatible with sustained work activity."[55]  As shown below, the ALJ explained why the

medical evidence does not support opinions that Villanueva's pain is disabling:

> While the evidence shows that the claimant has undergone neck surgery for fusion of C6-
> C7, tests have revealed only a slightly decreased range of motion in the neck (Exhibit
> R22), with an "intact" neurological examination, "resolving" bilateral C7 radiculopathy,
> "very minimal" changes in the bilateral C6 roots, "mild" slowing of the median sensory
> distal latencies at the wrists with "no significant nerve conduction slowing of ulnar
> transmission," and nearly full range of neck motion in November 2006.  (Exhibits R21;
> 5F3).  There is no evidentiary indication of motor, sensory, or reflex compromise; nor
> does the medical evidence document any compression or stenosis of the claimant's spinal

---

[52]*Id.* at p. 312.

[53]*See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[54]*See Newton*, 209 F.3d at 456.

[55]SSA record, at p. 15.

cord.[56]

The ALJ observed that her finding about Villanueva's residual functional capacity was actually more restrictive than the limitations found by Villanueva's own doctors—Dr. Javier restricted Villanueva from lifting/carrying over 50 pounds and Dr. Saldana restricted Villanueva from lifting/carrying over 40 pounds.  Villanueva correctly complains that Dr. Saldana's restriction[57] pre-dates Villanueva's onset date—and thus isn't relevant to Villanueva's residual functional capacity—but Dr. Javier's restriction was included in the opinion Villanueva complains about—the opinion stating Villanueva cannot work.[58]  A restriction of lifting up to 50 pounds is inconsistent with an opinion that a person cannot work, especially considering the absence of medical evidence supporting such an opinion.  The medical expert explained the inconsistency well.

The medical expert testified that Dr. Baylan's opinion doesn't make sense.[59]  She explained that Villanueva had a stable X-ray of his cervical spine, no evidence of any type of foramen stenosis, only mild carpal tunnel syndrome, a normal sensory examination, only mild narrowing of the foramen at L-4 of the lumbar spine, normal range of motion in the back, and a normal neurological back examination.  The medical expert further explained that Dr. Baylan's most recent notes indicated no blatant sensory loss, lower extremity power of five over five, shoulder power of four over five, and hypoactive deep tendon reflexes.  She testified that Dr.

---

[56]*Id*. at p. 15.

[57]*Id*. at p. 186.

[58]*Id*. at p. 125.

[59]*Id*. at p. 349.

Baylan's findings about tenderness, muscle spasms and tender points are short-term findings that are treated by stretching exercises.[60]  The ALJ properly relied on the medical expert's testimony in explaining why the medical record did not support Villanueva's allegations of disabling pain.[61]

"An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled.  It must be supported by clinical or laboratory findings."[62]  Here, neither Dr. Javier's opinion or Dr. Baylan's opinion is supported by clinical or laboratory findings.  Dr. Javier's treatment records can be characterized as sparse, in large part documenting Villanueva's complaints about pain and ailments unrelated to his allegation of disability.

Villanueva places the greatest reliance on Dr. Baylan's opinion that he cannot work, but Dr. Baylan's treatment notes do not support the opinion.  For example, on August 20, 2004—thirteen months after Villanueva's alleged onset date—Dr. Baylan examined Villanueva and found the following:  normal gait and station; fairly normal joints in upper extremities; tenderness of the cervical spinous process and greater occipital nerves (in the neck); no evidence of scoliosis; no apparent leg length discrepancy; level hips and shoulders; good range of motion in right and left upper extremities without deformity; mild to moderate tenderness of lateral epicondylar in both upper extremities (in the elbows); no muscle wasting (loss of muscle tissue resulting from disease of inactivity) in upper extremities; 1-2+ reflexes (normal reflexes); no significant sensory loss; muscle strength of 4+/5 (movement against some resistance by the

---

[60]*Id*. at p. 352.

[61]*Id*. at p. 15.

[62]*Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).

examiner) to 5/5 (normal) in both upper extremities; some degree of weakness of the neck prime mover secondary to pain; intact neck hardware; no evidence of any listhesis (no slippage of the vertebrae).[63]

Dr. Baylan's findings a year later also contradict the allegation of disabling pain.  At that time, Dr. Baylan found the following: normal gait and muscular extension; limited motion in spine and neck; negative Spurling sign (test for evaluating neck pain); muscle spasm in the neck; no curvature in the form of scoliosis or kyphosis; shoulders negative for winging of the scapula; no tenderness in thoracic spine; tenderness and muscle spasm in lumbar spine; trunk flexion about 45%; muscle power of 4/5; no significant motor deficit; positive Tinel's sign (used to diagnose carpal tunnel syndrome); 1+ reflexes (normal reflexes); and no blatant signs of radiculopathy (pain and other symptoms like numbness, tingling, and weakness caused by problems with nerve roots).[64]  Dr. Baylan commented Villanueva is going to suffer some pain and that he had learned to deal with it.[65]

Ten months later, Dr. Baylan examined Villanueva and found the following: fairly good posture of the cervical spine in relation of head to shoulder; normal range of motion; negative for Lhermitte's sign (used in evaluating neck pain); muscle spasm in lumbar spine; negative Lasegue's sign (straight leg maneuver used in diagnosing lumbosacral radiculopathy); negative Patrick's sign (used to determine the presence of sacroiliac joint disease); no muscle wasting; normal neurological examination; slight weakness in upper and lower limbs; hyper reflexes on

---

[63]SSA record, p. 258.

[64]*Id*. at p. 223.

[65]*Id*.

right side; and mild degenerative changes at L5 and S1.[66]  During the most recent examination,

Dr Baylan found the following: negative for any enlarged thyroid or palpable cervical lymph

nodes in neck; satisfactory alignment of spine; limitation of motion, especially

extension/rotation; no evidence of scoliosis of thoracic spine; satisfactory alignment of lumbar

spine; level hips; negative Lasegue's sign; negative Patrick's sign; normal range of motion in

extremities; no muscle atrophy; normal neurological exam; and muscle power of 4/5.[67]  These

examples show that substantial evidence supports the ALJ's determination that the medical

evidence does not support opinions that Villanueva's pain is disabling.  The examples also show

that substantial evidence supports the ALJ's determination that Villanueva has the residual

functional capacity to perform a limited range of light work and to perform his past work as

security guard.  The ALJ's opinion includes the applicable legal standards and reflects the proper

application of the standards.  The ALJ made no error of law.

### Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's

determinations, I recommend DENYING Villanueva's request for relief (docket entry # 3) and

AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and

recommendation on all parties by either (1) electronic transmittal to all parties represented by

attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not

---

[66]*Id*. at pp. 295-96.

[67]*Id*. at p. 314.

registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[68]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[69]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[70]

> **SIGNED** on September 1, 2008.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[68] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[69] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[70] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).